IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AVIATION EXCHANGE CORPORATION, INC., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civ. No. 08-533-SLR |
| NIGHTCLUB MANAGEMENT AND DEVELOPMENT, LLC; MOUNTAIN AIR PARTNERS, LLC; BIKERS DREAM INTERNATIONAL, LLC; REALTY DEVELOPMENT SERVICES MANAGEMENT, LLC; BROWN CJ2, LLC; SAM GUADAGNOLI; KYLE J. GEDITZ; GREGORY D. TIMM; RAYMOND F. O'SULLIVAN; and ALLEN BROWN | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**

At Wilmington this 10th day of March, 2009, having reviewed the motions to

quash service and the papers submitted in connection therewith by defendants Bikers

Dream International, LLC ("Bikers Dream"); Sam Guadagnoli ("Gaudagnoli"); Kyle J.

Geditz ("Geditz"); Gregory D. Timm ("Timm"); and Allen Brown ("Brown") (collectively,

"movants");

IT IS ORDERED that said motions (D.I. 16, 27, 29, 31, 33) are granted, for the

reasons that follow:

1. **Background.** Plaintiff Aviation Exchange Corporation, Inc., is a Delaware

corporation. (D.I. 1 at ¶ 1) Defendants Nightclub Management and Development, LLC

("Nightclub"); Mountain Air Partners, LLC ("Mountain Air"); Bikers Dream; Realty

Development Services Management, LLC ("Realty"); and Brown CJ2, LLC ("Brown CJ2") (collectively, "the company defendants") are Colorado limited liability companies, and defendants Guadagnoli, Geditz, Timm, O'Sullivan, and Brown (collectively, "the individual defendants") are Colorado residents. (*Id.* at ¶¶ 2-11) The individual defendants are, respectively, managers of the company defendants: Guadagnoli is manager of Nightclub, Geditz is manager of Mountain Air, Timm is manager of Bikers Dream, O'Sullivan is manager of Realty, and Brown is manager of Brown CJ2. (*Id.* at ¶¶ 7-11)

2. On June 21, 2007, plaintiff purchased a Cessna Citation CJ2 aircraft from the company defendants. (*Id.* at ¶ 14; *see also id.* at ex. 1) To effectuate the purchase, the parties entered into the Aircraft Purchase Agreement ("the Agreement"). (*Id.*) The individual defendants executed the Agreement in their capacity as managers and on behalf of their respective companies. (*Id.* at ex. 1, p. 19) The Agreement provides, *inter alia*, that any suit relating to the Agreement must be brought in the United States District Court for the District of Delaware and "that service of any court paper may be effected on [the] part[ies] by mail, or in such other manner as may be provided under applicable laws or court rules in Delaware." (*Id.* at ex. 1, § 9.20) The Agreement also provides, in relevant part, that "[a]ll communications . . . permitted by this Agreement shall be in writing and shall be deemed to have been . . . made when delivered personally . . ., or in the case of registered or certified mail, return receipt requested, . . . on the date shown on the receipt therefore [sic] . . . ." (*Id.* at ex. 1, § 9.12) Mail intended for the company defendants was to be sent to the following address:

2

C/O Brown CJ2, LLC
18401 East US Highway 24
Woodland Park, CO 80863
Allen Brown, Manager

(*Id.*)

3. On August 22, 2008, plaintiff filed the instant suit against defendants for, *inter alia*, breach of the Agreement. (D.I. 1) On September 10, 2008, a process server served a copy of the summons and complaint on defendants by delivery to the Delaware Secretary of State. (D.I. 4-13) On October 14, 2008, something was mailed to Guadagnoli at 20 North Tejon Street, Colorado Springs, Colorado 80903, via certified mail. (D.I. 36 at ex. A) On October 18, 2008, Timm received at his home via mail a copy of the summons and complaint. (D.I. 16 at 1) On October 20, 2008, certified mail intended for Bikers Dream arrived in Woodland Park, Colorado. (D.I. 39 at ex. D) On that same day, the mailing for Guadagnoli was delivered to a location in Colorado Springs, Colorado. (D.I. 36 at ex. A) On October 21, 2008, registered mail addressed to Brown at 725 Sun Valley Drive, Woodland Park, Colorado 80863, was received by Linda Brown. (D.I. 35 at ex. A) On February 15, 2009, a process server left a copy of the summons and complaint with Geditz's wife, Kiana Geditz, at Geditz's "usual" residence.[1] (D.I. 37 at ex. B)

4. **Analysis.** Federal law governs service of process in diversity suits. *Hanna v. Plumer*, 380 U.S. 460, 463-64 (1965). Generally, service of process must conform to Rule 4 of the Federal Rules of Civil Procedure. *See Martin v. Delaware Law School of*

---

[1] The awkwardness of this narrative is a direct result of plaintiff's deficient proof of service, which the court explores more fully hereafter.

*Widener Univ.*, 625 F. Supp. 1288, 1295 (D. Del. 1985). Pursuant to Rule 4, a defendant to an action filed in the District of Delaware may, if in the United States, be served by any of the following methods: (1) hand-delivery of a copy of the summons and complaint to the party or its authorized agent; (2), in the case of an individual, in-person delivery of a copy of the summons and complaint at the individual's usual residence "with someone of suitable age and discretion who resides there;" or (3) any method authorized under Delaware law. *See* Fed. R. Civ. P. 4(e) & (h). At all times relevant here, 10 Del.C. § 3104(d) authorized service on nonresident defendants described in 10 Del.C. § 3104(c) by filing a summons with the Delaware Secretary of State and then, within seven days, sending notice and copies of the summons and complaint to the nonresident defendant by registered mail. *See* 10 Del.C. § 3104(d);[2] *Carter v. Three Unknown Police Officers of Wilmington Police Dep't*, 112 F.R.D. 48, 50 (D. Del. 1986).

5. Conformity to Rule 4 is not required where the defendant agrees to an alternative method of service. *See Nat'l Equipment Rental, Ltd. V. Szukhent*, 375 U.S. 311, 315-16 (1964) ("it is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court, to permit notice to be served by the opposing party, or even to waive notice altogether"). Moreover, where a corporate or other entity is bound by contract, its alleged alter ego is likewise bound. *See McCarthy v. Azure*, 22 F.3d 351, 363 (1st Cir. 1994) (quoting *Fisser v. Int'l Bank*, 282 F.2d 231, 234-35 (2d Cir. 1960)) (applying generally operative principles of contract law to the alter ego doctrine

---

[2]Amendment to this statute took effect on October 7, 2008. *See* 76 Laws 2008, Ch. 329, § 1.

to hold that "the corporation and those who have controlled it without regard to its separate entity are treated as but one entity, and at least in the area of contracts, the acts of one are the acts of all").

6. Applying the foregoing here, the court concludes that Bikers Dream and the individual defendants are bound by the Agreement to receive service via the alternative methods provided therein. Bikers Dream, as a named party to the Agreement, clearly agreed to be so bound. Accepting plaintiff's allegations as true, *see Martin*, 625 F. Supp. at 1295, the individual defendants, in effect, likewise agreed. To wit, plaintiff, in its complaint, attributes the acts underlying this suit to both the individual and company defendants without differentiation and, in fact, alleges that the individual defendants are the alter egos of the company defendants. As alleged alter egos of the company defendants, the individual defendants are bound by the contracts to which the company defendants are parties. Because the Agreement, to which the company defendants are parties, provides for service via alternative methods, the individual defendants are bound to receive service via these alternative methods.[3]

7. Plaintiff bears the burden of proving that its service of process was valid for each of these defendants, *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993), which in this case means proving that service on each defendant conformed with either Rule 4 or the Agreement. To prove valid service, plaintiff must present to the court affidavits, declarations or signed returns of service from the process server. *See* Fed. R. Civ. P (4)(l); 28 U.S.C. § 1746 (allowing

---

[3]The individual defendants are likewise bound by the Agreement's forum selection clause and, thus, have consented to personal jurisdiction in this court.

declarations as substitutes for affidavits); *Patterson v. Brown*, 2008 WL 219965 (W.D.N.C. January 24, 2008) (citing cases).

8. Examining plaintiff's evidence of service, the court concludes that plaintiff has not shown that its service on movants was proper. Plaintiff represents, and the record suggests, that it attempted to serve movants in accordance with 10 Del.C. § 3104(d) (thereby complying with Rule 4(e)(2)(C)). As an initial matter, however, service pursuant to 10 Del.C. § 3104(d) is only proper if the defendants fall within the ambit of 10 Del.C. § 3104(c), and plaintiff has not alleged facts sufficient to show that any of the defendants falls within that provision. Showing compliance with 10 Del.C. § 3104(d), then, would not make service valid.

9. In any event, plaintiff's evidence does not show compliance with Rule 4 (through 10 Del.C. § 3104(d) or otherwise) or the Agreement. With respect to Geditz, plaintiff presents a process server's signed declaration to show that Geditz was served by the process server leaving a copy of the summons and complaint at Geditz's usual residence with his wife, who resides there and is of suitable age and discretion; this is competent evidence that Geditz was served in accordance with Rule 4(e)(2)(B), but the declaration also shows that service was effectuated on February 15, 2009, beyond the 120-day service deadline imposed by Rule 4(m). With respect to Brown, plaintiff proffers a registered mail return receipt but proffers nothing to show that the mailing contained a copy of the summons and complaint. Likewise, with respect to Guadagnoli, plaintiff proffers a certified mail receipt but does not accompany that receipt with any evidence of what was mailed. With respect to Timm, Timm does not dispute that he received a copy of the summons and complaint at his home via mail (D.I. 16 at 1), but

plaintiff fails to present evidence that the mailing was certified or registered, return receipt requested. Finally, with respect to Bikers Dream, plaintiff fails to show that copies of the summons and complaint were mailed to a proper address.[4]  Because plaintiff has not shown that its service on movants conforms with Rule 4 or the Agreement, their motions to quash are granted.[5]

11. **Conclusion.** Consistent with the foregoing analysis, the court concludes that plaintiff did not properly serve movants. Accordingly, their motions to quash are granted. The court acknowledges that the 120-day window for timely service has lapsed but notes that it has discretion, pursuant to Rule 4(m), to extend the time for service. *E.g., Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997). Because extending the time for service here will not, as far as the court is aware, prejudice any defendant, the court hereby orders that service effectuated upon any defendant in compliance with Rule 4 or the Agreement[6] will be deemed timely if accomplished by April 17, 2009.

United States District Judge

_____

[4]Plaintiff's proffer of a confirmation of mailing and a certified mail receipt evidences that something was mailed to "Woodland Park, CO 80863." (D.I. 39 at ex. D) That incomplete mailing address, however, is neither the mailing address specified in the Agreement nor the mailing address of Bikers Dream or its agent (D.I. 33 at ex. A) and, thus, fails to establish that Bikers Dream was properly served.

[5]Even if the mailings to movants contained copies of the summons and complaint, the evidence suggests that the mailings occurred more than seven days after plaintiff delivered copies of the summons and the complaint to the Delaware Secretary of State and so did not comply with 10 Del.C. § 3104(d).

[6]Defendants, including individual defendants, may receive service at the "If to Seller" address set forth in § 9.12 of the Agreement.

7